UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MATTHEW W. HARDEY                                          CIVIL ACTION

VERSUS                                                     NO. 07-9025

NEWPARK RESOURCES, INC., ET AL                             SECTION S/4

## ORDER and REASONS

Defendants Newpark Resources, Inc., and Paul Howes ("Newpark") filed a motion for reconsideration of this Court's RULING ON MOTIONS, dated February 13, 2008 (rec. doc. #13), granting in part and denying in part Newpark's motion to dismiss certain claims. Rec. Doc. #14. The matter was considered on the briefs on March 12, 2008. The Court is now prepared to rule.

## ANALYSIS

In Lavespere v. Niagra Machine & Tool Works, Inc., 910 F.2d 167, (5th Cir. 1990), the Fifth Circuit instructed that the Federal Rules do not recognize a "motion for reconsideration" in those exact terms. "We have consistently stated, however, that a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b)." Id. at 173. The prior ruling at issue here is the Court's denial of defendants' motion to dismiss Hardey's tort claim against both defendants. It is not a "prior judgment on the merits" as it does not terminate the action as to any of the parties or claims, and as such, is an interlocutory order that "is subject to revision

at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." See Fed. R. Civ. P. 54(b).[1]

On February 13, 2008, the Court dismissed with prejudice Hardey's LUTPA claim and defamation claim against all defendants, and the breach of employment contract claim against defendant Howes individually. *See* rec. doc. #13. At the same time, the Court denied Newpark's motion to dismiss Hardey's breach of employment contract claim against Newpark and his tort claim against both defendants. Newpark's motion for reconsideration argues that Hardey's tort claim against both defendants should be dismissed because (1) it has prescribed, and (2) it is a repeat of his defamation claim "recast to eviscerate the privilege ... the Defendants enjoy." *See* Newpark's Memorandum in Support of Motion for Reconsideration. Rec. doc. #14.

I.

Newpark argues that Hardey's tort claim must be dismissed because publication of that information cannot support a negligence claim separate from the defamation claim that has already been

---

[1] An interlocutory order is not subject to being vacated under Rule 60(b). Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970). The Bon Air Hotel court concluded that "because the order was interlocutory, 'the court at any time before final decree (could) modify or rescind it.'" Id. (quoting John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922); see also Zimzores v. Veterans Administration, 778 F.2d 264, 266 (5th Cir. 1985)("Interlocutory orders and judgments are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." 7 Moore's Federal Practice ¶ 60.20 at 60-170 (2d ed. 1985)).

dismissed.  Newpark cites Christian v. Fontenot, 672 So.2d 436, 444 (La. App. 2d Cir. 1996) for the assertion that "[w]e are unaware of any tort for negligently speaking." Newpark argues that by "alleging that Defendants failed to correct statements they knew to be false, Hardey merely alleges the falsity element" for a defamation claim under Louisiana law.  Newpark Memo, p. 7.  Hardey argues that his tort claim is not based on Newpark's publication of allegedly incorrect information, but that the defendants are independently negligent under Louisiana law for failure to correct the alleged incorrect and damaging published information when they learned that the published information that was incorrect.  In support of his argument he cites Jones v. Simonson, 292 So.2d 251, 254 (La. App. 4th Cir. 1974) and Firstley v. Bill Watson Ford, Inc., 268 So.2d 314, 317 (La. App. 4th Cir. 1972) as both holding that failure to correct erroneous information that caused the plaintiff injury gives rise to a negligence cause of action pursuant to La. Civ. Code art. 2315.

In its Reply Memorandum, rec. doc. #19, Newpark argues that Hardey's reliance on Jones and Firstley is misplaced, because both cases merely stand for the proposition that a negligence claim can be maintained for false imprisonment and malicious prosecution under Louisiana Civil Code art. 2315.  Newpark identified thirteen cases (state and federal) as citing to Jones and Firstley in discussing false imprisonment and malicious prosecution.  In Jones

v. Simonson, the appellate court affirmed the trial court's holding that the defendant was liable for damages to the plaintiff because he swore out a warrant for her arrest (and had her arrested at her place of employment) for theft of a rug belonging to him although he had previously been informed by his tenant, with whom the plaintiff had lived, that the tenant, not Jones, had taken the rug to have it cleaned. 292 So.2d at 254. The Court agrees that the Jones case was an action for damages for false arrest, and is not applicable to this case.

However, only three of the cases cited by Newpark in support of its argument include mention of the Firstley case. In that case, on a Saturday, Firstley was given a demonstrator vehicle by defendant Bill Watson Ford, Inc. ("Watson Ford") to drive for the week-end while awaiting delivery of another car that he had agreed to purchase. The demonstrator given to Firstley had been reported stolen by Watson Ford several months earlier, but shortly thereafter had been recovered by the dealership without the intervention of the police. On Sunday, Fristley was stopped by two New Orleans police officers while driving the demonstrator. Upon checking by radio with the Auto Theft Bureau of the New Orleans Police Department, they discovered that the vehicle was listed as stolen. The officers arrested Firstley and his four passengers, who were all incarcerated and charged with theft and possession of a stolen car. Firstley, 268 So.2d at 315. By Monday afternoon

they were released, four after posting a $500.00 bond each, and one on his own recognizance. Id., at 316. Ultimately, all five sued Watson Ford for damages as a result of their incarceration and the criminal charges made against them, and the City of New Orleans and the arresting officers for false arrest. Id., 316-317. After a trial, the court entered judgment against Watson Ford only, dismissing all other defendants.

On appeal, Watson Ford argued that the plaintiffs could not recover damages because of their failure to show an absence of probable cause and a presence of malice. Id., at 316. The appellate court disagreed as follows:

> In seeking to have us reject plaintiffs' demands for damages because of an absence of showings of no probable cause and the presence of malice (a plaintiff burden in a suit for malicious prosecution), this appellant seeks to have us consider the suit for damages as being based on malicious prosecution.[] Clearly, this is not a case of malicious prosecution; there was no prosecution on the part of Watson Ford. *This is a tort suit based on negligence. The sole cause of plaintiffs' incarceration and criminal charges made against them was Watson Ford's negligence in causing Firstley to use a demonstrator which Watson Ford had reported as stolen and which it had never reported as recovered. ....* Watson Ford is liable for the damages resulting from that negligence.

Id., at 316-317 (footnote omitted, emphasis supplied). The appellate court further affirmed the trial court's dismissal of the claim for false arrest against City of New Orleans and the arresting police officers, finding that they had acted properly

based on the fact that the vehicle was listed as stolen in the appropriate records. Id., at 317. In discussing the quantum awarded for damages, the court observed that "the plaintiffs were arrested, incarcerated and charged with theft and possession of a 'stolen' vehicle. They remained in jail for approximately 26 hours." Id. The appellate court affirmed the damages award of $3000 to each plaintiff. Id.

In Brewer v. Blackwell, 692 F.2d 387 (5th Cir. 1987), one of the cases cited by Newpark in support of its argument, the Court mentioned the Firstley case in affirming a directed verdict dismissing a false imprisonment claim against a defendant police officer. Id., at 400. The case did not repudiate the plaintiffs' negligence claim brought against Watson Ford in Firstley. In Ezenwa v. Gallen, 906 F.Supp. 978 (M.D.Pa. 1995), a Pennsylvania case also cited by Newpark, during a lengthy philosophical discussion of whether the plaintiffs must show actual physical damages to recover under Pennsylvania products liability law, the trial court observed that the plaintiffs cited the Firstley case "for the proposition that a person may be held liable for negligently causing the arrest of another." Id., at 983. Finally, Newpark cited Lindsey v. Sears, Roebuck & Co., 389 So.2d 902 (La. App. 4th Cir. 1980), in support of its argument. In that case, the plaintiff cited Firstley arguing that the neglect of the sales clerk in failing to remove the tag triggering the electronic devise

resulted in her unlawful detention.  <u>Id.</u>,at 904.  The appellate court reversed the trial court's award of $500 in damages based solely on the application of an amendment to La. C. Cr. P. Art 215(B), providing that when notice is posted in the store, reasonable cause exists to detain a customer when the electronic device is triggered.  <u>Id.</u>, at 905.  None of these cases repudiates the <u>Firstley</u> court's determination that a negligence cause of action exists under Louisiana law when a defendant's negligent failure to act to correct information that, when left uncorrected, causes a plaintiff damages.

II.

Newpark next reiterates its argument that the privilege provided by La. R.S. §14:50[2] shielding both defendants from defamation liability also shields them from negligence liability. Newpark cites <u>Varnado v. Department of Employment and Training</u>, 687 So.2d 1013 (La. App. 1st Cir. 1997), *writ denied*, 692 So.2d 394 (La. 1997), and <u>Christian v. Fontenot</u>, 672 So.2d 436 (La. App. 2nd Cir.

---

[2] Record document #4, Memorandum in Support of Motion to Dismiss Certain Claims, p. 11.  This statute, found in the Louisiana Criminal Code, provides in relevant part as follows:

> There shall be no prosecution for defamation in the following situations:
> ....
> (2) When a statement is made by a witness in a judicial proceeding, or in any other legal proceeding where testimony may be required by law, and such statement is reasonably believed by the witness to be relevant to the matter in controversy.

According to the Reporter's Comments, Thomson/West, Vol. 8B (2007), Subdivision (2) is broad enough to include administrative tribunals and legislative hearings.

1996), *writ denied*, 679 So.2d 105 (La. 1996) in support of its argument. Neither case is applicable here because both involve a claim of privilege pursuant to La. R.S. 9:2798.1. This statute expressly shields state "public entities"[3] from liability based upon "the exercise or performance of or their failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B); Christian, 672 So.2d at 443; Varnado, 687 So.2d at 1042.

First, neither defendant in this case qualifies as a "public entity" entitled to the privilege provided by La. R.S. 9:2798.1, nor do they claim such a privilege. Second, the immunity protection provided by each statue is based on distinctly different policy considerations and principle. The two-pronged inquiry into whether La. R.S. 9:2798.1 immunity applies requires a finding of whether the challenged act or omission is prohibited by a statute, regulation or policy, and if not, whether the challenged act or omission "is grounded in political, economic or social policy".

---

[3]The statute defines a "public entity" as:

> the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivision and the departments, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees of such political subdivisions.

La. R.S. 9:2798.1(A).

-8-

Christian, 672 So.2d at 444; Varnado, 687 So.2d at 1043. The application of this two-pronged inquiry was explained as follows:

> Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level.

Christian, 672 So.2d at 444, *quoting* Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989); Varnado, 687 So.2d at 1043, *quoting* Fowler, id. The Christian court, observing that it was "unaware of any tort for negligently speaking", found that when "the discretionary immunity function applies, the defendants are shielded from negligence liability". Christian, at id.

On the other hand, La. R.S. 14:50 provides immunity from both civil and criminal liability for statements by a witness in any legal proceeding where that testimony is *required* by law, assuming that the witness reasonably believes the statement is relevant to the matter in controversy. American Lifecare, Inc. v. Wood, 826 So.2d 646, 648 (La. App. 4th Cir. 2002), *writ denied*, 836 So.2d 50 (La. 2003). There is no dispute that this immunity applies to both defendants herein regarding the statements challenged in this lawsuit. *See, e.g.,* SEC v. Beisinger Indus. Corp., 552 F.2d 15 (1st Cir. 1977). The consideration behind this principle is that the witness who is bound by his oath to tell the truth in a judicial, quasi-judicial, or administrative proceeding should be free to

speak freely without fear of civil lawsuits for damages for defamation. Cooksey v. Stewart, 938 So.2d 1206, 1210 (La. App. 2nd Cir. 2006), *quoting* Bienvenu v. Angelle, 223 So.2d 140, 144 (La. 1969), *rev'd on other grounds by* Gonzalez v. Xerox Corp., 320 So.2d 163 (1975); *see, e.g,* American Lifecare, 826 So.2d at 648; Carnegie Intern'l Corp. v. Grant Thornton, LLP, 2006 WL 990960 *2 (Md. Cir. Ct. 2006)[4]. The fact that such testimony is required, not discretionary, and is presumed to be true suggests that, should the witness later learn of facts indicating that the testimony previously given was incorrect, the witness has a duty to correct that testimony if the failure to do so causes damage to another. Defendants have identified no Louisiana jurisprudence that extends the absolute privilege of La. R.S. 14:50 to include blanket negligence liability.

### III.

Newpark finally claims that Hardey's tort cause of action must be dismissed because it is subject to the Louisiana prescriptive period of one year from the time a plaintiff has actual or constructive knowledge of facts indicating that he or she has been the victim of a tort. *See* La. Civ. Code art. 3492. It argues that the alleged tort is the publication of allegedly incorrect information regarding Hardey's participation in and connection with

---

[4]The Carnegie court applied a Maryland immunity statute, similar to but broader than La. R.S. 14:50, to filings made pursuant to SEC requirements.

irregularities within the Newpark corporate structure and his termination on that same day, June 29, 2006, therefore his cause of action arose more than one year before he filed this lawsuit on November 19, 2007.  Hardey argues that the tort did not accrue when the allegedly false statements were published, but in March, 2007, when Newpark and Howes were provided with contrary evidence and remained silent, failing to correct the allegedly false statements that were made public.  *See* Hardey's Petition, ¶12.  As discussed *supra*, this cause of action did not accrue when the statements were initially published, but when the defendants allegedly learned that they were incorrect in March 2007, and failed to act to correct the published information regarding Hardey.

The Court concludes that Hardey's Petition adequately states valid tort claim under Louisiana law against both defendants separate from the previously dismissed defamation claim that is sufficient to survive a Rule 12(b)(6) motion to dismiss, and that on the face of the pleadings, that tort claim has not prescribed.

Accordingly,

**IT IS ORDERED** that the defendants' motion for reconsideration is **DENIED**.

New Orleans, Louisiana, March 18, 2008.

_____
**MARCEL LIVAUDAIS, JR.**
**Senior United States District Judge**